**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| WES NEWMAN, on behalf of himself and all others similarly situated, <br><br>            Plaintiff, <br><br> v. <br><br> QUALITY ONE INC., MSM LEADS, KEVIN MONTALVO, MANJINDER TAKHAR and STEPHEN NORRIS <br><br>            Defendants. | Case No. 20-cv-01685 <br><br> **ORIGINAL CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## ORIGINAL CLASS ACTION COMPLAINT

COMES NOW Plaintiff Wes Newman (hereinafter referred to as "Newman" or "Plaintiff"), on behalf of himself and all similarly situated individuals, and alleges on personal knowledge, investigation of his counsel, and on information and belief, the following claims against Quality One Solutions, MSM Leads, Kevin Montalvo, Manjinder Takhar, and Stephen Norris:

### NATURE OF ACTION

1.    This action is brought for violations of the Telephone Consumer Protection Act of 1991,47 U.S.C. §227, et seq. ("TCPA" or "the Act"). Among other things, the TCPA and its accompanying regulations prohibit telemarketers from making telephone solicitations to persons who have listed their telephone numbers on the National Do-Not-Call Registry, a database established to allow consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written agreement.

2.    Plaintiff Wes Newman is one of the millions of consumers who have listed his telephone numbers on the National Do-Not-Call Registry. Nonetheless, he has received

numerous telemarketing sales calls on his Residential Land Line made by, or on behalf of, Defendant.

## SUBJECT MATTER JURISDICTION AND VENUE

3.    This court has original jurisdiction of this civil action as one arising under the laws of the United States. *See* 28 U.S.C. §1331 and *Mims v. Arrow Fin. Serv., LLC*, 565 U.S. 368, 132 S. Ct. 740, 181 L. Ed.2d 881 (2012).

4.    Venue is proper in this Court under 28 U.S.C. §1391(b) because Defendants victimized Plaintiff on his Residential Line located in the City of Chicago, Illinois, where Plaintiff lives.

5.    Venue is also proper in this Court under 28 U.S.C. §1391(b) as Defendants regularly do business in the district and division, are subject to this Court's personal jurisdiction with respect to this civil action in the district and, as such, "reside" in the district.

## PARTIES AND PERSONAL JURISDICTION

6.    Plaintiff Wes Newman is, and at all times mentioned herein was, an individual citizen of the State of Illinois who resides in Chicago, Illinois.

7.    Defendant Quality One Inc. is a Delaware corporation and may be served by serving its registered agent for service, Business Filing Incorporated, 108 W. 13th Street, Wilmington, DE 19801.

8.    Defendant MSM Leads is a California Corporation with its principal place of business located at 43264 Business Park Drive #105, Temecula, CA 92590 and may be served by serving its registered agent for service, Manjinder Takhar, 43264 Business Park Drive #105, Temecula, CA 92590.

9. Defendant Kevin Montalvo is an officer and director of MSM Leads and may be served at 43264 Business Park Drive, #105, Temecula, CA, 92590 or wherever he may be found.

10. Defendant Stephen Norris is also an officer and director of MSM Leads and may be served at 43264 Business Park Drive, #105, Temecula, CA 92590 or wherever he may be found.

11. Defendant Manjinder Takhar is the CEO, officer, director and registered agent for MSM Leads and may be served at 43264 Business Park Drive, #105, Temecula, CA 92590.

12. Defendants transact business throughout the United States, including in Illinois and specifically in this district and division.

13. In addition to transacting business in Illinois, Defendants contract to supply services or goods in Illinois, including in this district and division.

14. Defendants regularly do, or solicit, business, or engage in other persistent courses of conduct, or derive substantial revenue from goods used or consumed or services rendered in the State of Illinois, including in this district and division.

15. In addition, through its acts in calling, or causing to be called, Plaintiff's Do-Not-Call Registry Cellular Telephone, Defendants caused tortious injury in the nature of an invasion of Plaintiff's privacy rights in this State, either by its acts in this State or, alternatively, by acts outside this State while regularly doing or soliciting business or engaging in a persistent course of conduct and deriving substantial revenue from goods used or consumed, or services rendered in this State.

16. At all times pertinent, Defendants were, and are, engaged in interstate commerce, and Defendants used, and are using, instrumentalities of interstate commerce, including telephone lines and the mail, in the course of its activities set forth herein.

## APPLICABLE LAW

17.     The TCPA was enacted nearly thirty years ago to regulate the explosive growth of telemarketing, which Congress recognized as a nuisance and an intrusive invasion of privacy.

18.     Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the National Do- Not-Call Registry. 47 C.F.R. § 64.1200(c) (2). According to the Federal Trade Commission, the Registry, which was established in 2003, currently has over 223 million active registrations.

19.     These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. *Id*.

20.     Because a telephone subscriber listed on the National Do-Not-Call Registry must take an affirmative step to register his or her number, a telemarketer who wishes to call a person listed on the National Do-Not-Call Registry must take a similarly affirmative step, and must obtain the registrant's signed, written agreement to be contacted by the telemarketer. *Id*. § 64.1200(c)(2)(ii). The written agreement must also include the telephone number to which the calls may be placed. *Id*.

21.     A person whose number is on the National Do-Not-Call Registry and has received more than one telephone solicitation within any twelve-month period by, or on behalf of, the same entity in violation of the TCPA, can sue the violator and seek the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. §227(c)(5).

22.     Telemarketers who wish to avoid calling numbers listed on the National Do-Not-Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the National Do-Not-Call Registry database. The scrubbing process identifies those numbers on the

National Do-Not-Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

23.     To avoid violating the TCPA by calling registered numbers, telemarketers *inter-alia* must scrub their call lists against the National Do-Not-Call Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

24.     Regulations implementing the TCPA also require entities to maintain Internal Do-Not-Call Registries. 47 C.F.R. § 64.1200(d). Once an entity receives a request from a residential telephone subscriber not to receive calls, the number must be placed on the entity's Internal Do-Not-Call Registry within a reasonable time, not to exceed thirty days from the date of the request. *Id*. at § (d)(3).

25.     It has long been the law that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls.

26.     The provision that establishes a private right of action against an entity that violates the National Do-No-Call Registry restrictions provides that "[a] person who has received more than one telephone call within any 12-month period ***by or on behalf of*** the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added). Likewise, 47 C.F.R. § 64.1200(d)(3) provides that once a number is added to an entity's Internal Do-Not-Call Registry, "***the person or entity on whose behalf the telemarketing call is made*** will be liable for any failures to honor the do-not-call request."

27.     As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."

- 5 -

*See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

28.     The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

29.     The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. *In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013).

**FACTUAL ALLEGATIONS AS TO PLAINTIFF WES NEWMAN**

30.     During 2018, Plaintiff received numerous calls and texts on his cellular phone line ending in -4523 from a company offering business loans. Through his investigative efforts, Plaintiff would eventually discover that all Defendants caused, encouraged, and actually placed all the calls to Plaintiff's residential phone line.

31.     Specifically, as officers and/or directors of MSM and Quality One, Montalvo, Takhar, and Norris developed a sophisticated illicit telemarketing scheme and directed employees and/or agents to place illicit calls to consumers nationwide without requisite consent.

32.     The calls in question first began in and around August 24, 2018.  The company calling/texting stated, through a call center agent or computerized SMS "text", that its name was Quality One Solutions. Quality One's voicemails and texts all mentioned a loan application and that Plaintiff had qualified for $55,000.

33.     This claim greatly concerned Plaintiff.  Plaintiff had never applied for a loan of any kind (other than student loans).  Plaintiff never contacted Quality One (or any of the other Defendants) or gave it express invitation or permission to contact him on his cellular phone and/or residential line.  Furthermore, Plaintiff never had an established business relationship with Defendants or made an inquiry to Defendants about their products and services.  Nonetheless, Defendants called Plaintiff numerous times.

34.     Whenever Plaintiff answered a call from Quality One, the call center representative asked for Plaintiff's total debt balance. After many calls and conversations with Quality One, which mostly ended with the call center representative hanging up on Plaintiff for asking any basic questions about the company's background, one of the reps eventually told Plaintiff that Quality One's website was FicoRehab.com.

35.     Plaintiff called and spoke to "Kevin" at the number listed on the FicoRehab.com website and asked him if he knew about Quality One.  Kevin claimed he had never heard of Quality One.  Plaintiff told him that Quality One was calling and giving out his (Kevin's) website info as its own.  Kevin claimed to be surprised by Plaintiff's experiences.

36.     After receiving many more calls, Plaintiff decided to answer Quality One's questions with made-up info (name & debt) in order to see what the next step of these calls were. Some trial and error helped Plaintiff determine that an applicant needed $10,000 in unsecured

debt in order to get passed along to the next level. This next level was a company called DebtTrends (their websites are attyreferralservices.com & debttrends.com).

37.    Plaintiff eventually spoke to an individual at DebtTrends named Lawrence Price. Mr. Price explained a bit about their debt relief service, which involved assigning the customer to an attorney who would assist in negotiating lower monthly debt payments and similar outcomes. Plaintiff asked Mr. Price to email additional information so that he could better understand the program. Mr. Price complied.

38.    After receiving an email from Mr. Price, Plaintiff contacted the number listed in Mr. Price's signature block to determine if the company was legitimate. When Plaintiff called, someone at the switchboard claimed to be with "Debt Relief Services."

39.    Plaintiff then called different extensions at DebtTrends asking what law firm they sent clients to. DebtTrends' representatives provided the name Erik M. Helbing, of Helbing Law Group. Plaintiff called a few numbers under Mr. Helbing's listing and left his name, number, and email address with the receptionist at Compass Rose Law Group, a firm for which Helbing is Of Counsel.

40.    Mr. Helbing emailed Plaintiff that night to request a call the next day. Plaintiff agreed to attend a call. After Plaintiff let Mr. Helbing know that the company calling him repeatedly referred Plaintiff to him, Mr. Helbing replied "how can we make this go away?" Plaintiff stated that all he wanted at the time was for the calls to stop, the actual name of the "Quality One" company, and where that entity had bought Plaintiff's number. Helbing told Plaintiff he would get back to him with that info the next week but never did.

41.    Plaintiff continued answering Quality One's calls and would also call them back to confirm the true identity of the company. Eventually a sympathetic female call center

representative told him the company's name really is Quality One Solutions. But she also told Plaintiff the name of the company that owns them is MSM Leads. She then told Plaintiff their website was msmleads.com.

42.     Plaintiff called MSM Leads in November 2018 and spoke to an employee named Stephen. Stephen told Plaintiff there was no way that he could have received as many calls as he claimed, and that he had never heard of Quality One. Stephen said Plaintiff needed to speak with their tech guy "Kevin" to get the calls to stop, so he gave Plaintiff Kevin's cell number.

43.     When Plaintiff called Kevin, Kevin said he was driving and couldn't really speak at that moment. Kevin told Plaintiff to text him Plaintiff's number, and he would later look into the issue and call back. Kevin did call back and claimed he had never heard of Quality One, but they may have been an active client of MSM Leads. Kevin further claimed they (MSM Leads) are not a call center and that they just provide the software. On the heels of this claim, however, Kevin stated that he looked into their (MSM Leads') **_calling program_** and Plaintiff's number had been put in their do not call list. He further explained that Plaintiff's number had not actually been pushed through to **_their dialing system_** and that's why Plaintiff was still getting calls. Kevin claimed the problem was fixed and Plaintiff should not receive any more calls.

44.     On January 31, 2019, approximately one month after Plaintiff's conversation with Kevin, the calls started back up. Plaintiff began calling MSM Leads and Kevin's cell number to get the calls to stop. MSM had disconnected their phone lines, and Kevin's cell would go straight to voicemail. Plaintiff tried texting him but never received a response. Plaintiff then found that Kevin Montalvo is the owner of FicoRehab.com (*see* paragraph 32) and also MSM Leads, so Plaintiff then knew he had spoken to him when Quality One had initially given him the FicoRehab.com site.

45.     The first individual Plaintiff spoke with at MSM turned out to be Stephen Norris, one of the company board members listed on the California Secretary of State business fillings. Plaintiff found his LinkedIn page, which reveals Mr. Norris sells leads/numbers, offers different software like ringless voicemail from their company DropRVM (which also mentions their owner as MSM Leads and debtready.com**,** while also referring to themselves as "QS" which may stand for Quality Solutions).

46.     Plaintiff emailed Mr. Norris and messaged him on Facebook, trying to get the calls to stop. Plaintiff also sent Mr. Norris a message on LinkedIn after Plaintiff began receiving calls from other companies asking for the fake name that Plaintiff had made up early in this process. When Mr. Norris told Plaintiff that he did not sell any information of that nature, Plaintiff provided Norris with proof from his own LinkedIn page.  Norris then deleted those posts and blocked Plaintiff.

47.     Kevin Montalvo's LinkedIn page shows he owns Veritech. Stephen Norris' LinkedIn activities feed show him promoting a few of their companies, and also includes two job ads from VeriTech/MSM Leads for call center employees.

48.     As a result of Defendants' intentional violations of the TCPA, Plaintiff has suffered actual damages, including, but not limited to aggravation, mental anguish, lost hours in the workday, lost use of a telephone line, and invasion of his privacy.

49.     Defendants Norris, Montalvo, and Takhar own and operate Quality One and MSM Leads.  These companies obtain leads on a gray market and use their call center to place telemarketing calls to the telephone numbers attached to the leads they buy on the gray market.

50.     Defendants Norris, Montalvo, and Takhar, through their managerial and ownership roles in the Defendant companies, personally oversaw and directed the illegal telemarketing scheme that is the subject of this lawsuit.

51.     Plaintiff seeks to represent a class of all other similarly situated individuals who received illegal telemarketing calls from Defendants.  Plaintiff's goal is to change Defendants' business practices, so they comply with the TCPA and will prevent further harm to consumers in the future.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings Count I of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

**NATIONAL DO-NOT-CALL REGISTRY CLASS:**

All natural persons in the United States who, from four years prior to the commencement of this litigation, received more than one telephone solicitation call in a 12-month period on their Residential Land Line telemarketing Defendants' services more than 31 days after registering their telephone number with the National Do-Not-Call Registry. Excluded from this class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, any judge assigned to hear this action, anyone with a legally sufficient established business relationship, and anyone who provided express invitation or permission to receive calls from Defendants.

53.     Plaintiff reserves the right to modify this class definition as he obtains relevant information, including telemarketing call records, through discovery.  Plaintiff brings Count II of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

**INTERNAL DO-NOT-CALL REGISTRY CLASS**

All natural persons in the United States who, from four years prior to the commencement of this litigation, received one or more telephone solicitation calls on their Residential Land Line telemarketing Defendants' services after registering their telephone number with Defendants' Company-Specific Do-Not-Call Registry. Excluded from this class definition are any employees,

officers, directors of Defendants, and attorneys appearing in this case, and any judge assigned to hear this action.

54.     Plaintiff reserves the right to modify this class definition as he obtains relevant information, including telemarketing call records, through discovery.

55.     The proposed classes can be identified through telephone records and databases used in transmitting the telemarketing calls.

56.     The number of Putative Class Members is believed to be in the thousands, rendering the classes so numerous that individual joinder of all class members is impracticable.

57.     Plaintiff is a member of both proposed classes.

58.     There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

        a.     Did Defendants place, or have placed, telemarketing calls to Plaintiff and the Putative Class Members?

        b.     Whether the Defendants had Prior Express Invitation or Permission to make, or have made on its behalf, each of the calls to Plaintiff's and the Putative Class Members' Residential Land Lines?

        c.     Whether Defendants' conduct violated 47 U.S.C. § 227(c) [National Do-Not-Call Registry]?

        d.     Whether Defendants willfully or knowingly violated 47 U.S.C. § 227(c) [National Do-Not-Call Registry]?

        e.     Whether Defendants' conduct violated 47 C.F.R. § 64.1200(d)(3) [Internal Do-Not-Call Registry]?

        f.     Whether Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(d)(3) [Internal Do-Not-Call Registry]?

59.     Typicality. *Fed. R. Civ. P. 23(a)(3)*. Plaintiff's claims are typical of the claims of the two (2) proposed Putative Classes' Members. Plaintiff would only seek individual or actual damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other Members of the two (2) proposed Putative Classes.

60.     Adequacy. *Fed. R. Civ. P. 23(a)(4)*. Plaintiff is an adequate representative of the two (2) proposed Putative Classes because his interests coincide with, and are not antagonistic to, the interest of the Members of each proposed Putative Class he seeks to represent; he has retained counsel competent and experienced in such litigation; and he intends to prosecute this action vigorously. Plaintiff and his Counsel will fairly and adequately protect the interests of Members of the two (2) proposed Putative Classes.

61.     Superiority. *Fed. R. Civ. P. 23(b)(3)*. Questions of law and fact common to the two (2) proposed Putative Classes' Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories.  Willfulness will be determined based on Defendants' conduct and knowledge, not upon the effect of Defendants' conduct on the two (2) Putative Classes' Members.

62.     The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the two (2) proposed Putative Classes' Members individually to redress effectively the wrongs done to them, as the TCPA has no attorney's fee shifting provision. Even if the members of the two (2)

- 13 -

proposed Putative Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

63.     Class certification is appropriate because Defendant has acted on grounds generally applicable to the two (2) proposed Putative Classes, making appropriate equitable injunctive relief with respect to Plaintiff and the two (2) proposed Putative Class Members. Fed. R. Civ. P. 23(b)(2).

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF 47 U.S.C. 227(C)
### TELEMARKETING IN VIOLATION OF THE TCPA'S NATIONAL DO-NOT-CALL PROVISIONS

64.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

65.     In violation of 47 U.S.C. § 227(c), Plaintiff and all Members of the National Do-Not-Call Registry Putative Class, received telemarketing calls promoting the sale of products and services on Residential Land Lines listed on the National Do-Not-Call Registry.

66.     Plaintiff and National Do-Not-Call Registry Putative Class Members received more than one such call in a twelve-month period.

67.     By virtue of the foregoing, Defendants violated 47 U.S.C. §227(c) as to Plaintiff and the Class and the National Do-Not-Call Registry Putative Class by initiating, on more than

one occasion, a telephone solicitation call to the Residential Land Lines of Plaintiff and the Members of the National Do-Not-Call Registry Putative Class without the prior express written consent or invitation or permission of Plaintiff or the Members of the National Do-Not-Call Registry Putative Class, and without there being an established business relationship with the Plaintiff or the Members of the National Do-Not-Call Registry Putative Class.

68.     Pursuant to 47 U.S.C. §227(c)(5), Plaintiff and each National Do-Not-Call Registry Putative Class Member is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiff and each National Do-Not-Call Registry Putative Class Member.

69.     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff, on behalf of himself and the National Do-Not-Call Registry Putative Class, also seeks injunctive relief prohibiting Defendants' violations of the TCPA in the future.

**COUNT II**
**VIOLATION OF 47 C.F.R. § 64.1200(D)(3)**
**FAILURE TO HONOR COMPANY-SPECIFIC DO-NOT-CALL REQUESTS**

70.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

71.     In violation of 47 C.F.R. § 64.1200(d)(3), Defendant continued to make telemarketing calls to Plaintiff and the Internal Do-Not-Call Registry Putative Class after they were listed on the Defendants' Internal Do-Not- Call Registry.

72.     Plaintiff and the Internal Do-Not-Call Registry Putative Class received more than one such call in a twelve-month period.

73. Pursuant to 47 U.S.C. §227(c)(5), Plaintiff and each Internal Do-Not-Call Registry Putative Class Member is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendants are found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiff and each Internal Do-Not-Call Registry Putative Class Member.

74. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff, on behalf of himself and the Internal Do-Not-Call Registry Putative Class, also seeks injunctive relief prohibiting Defendants' violations of the TCPA in the future.

## DEMAND FOR PRESERVATION

75. Plaintiff also specifically demands that Defendants retain and preserve all records related to the allegations in this Complaint. Specifically, Plaintiff's demands for preservation includes, but is not limited to, the following documents and information:

(a) All documents evidencing all phone numbers, including spoofed numbers, used by Defendants and/or persons acting on their behalf in making telemarketing calls to Residential Land Lines for the last four years;

(b) All documents evidencing the identity of all persons to whom Defendants, and/or persons acting on their behalf, made one or more telemarketing calls to a Residential Land Line or to whom Defendants, and/or persons acting on their behalf, made more than one telephone solicitation call to a Residential Land Line, where the names and/or telephone numbers of the called party were obtained by Defendants, and/or persons acting on their behalf.

(c)     All documents evidencing the number of telephone solicitation calls made to each Residential Land Line to which Defendants, and/or persons acting on their behalf, made more than one telephone solicitation call in the four years preceding this lawsuit;

(d)     All documents, including transmission or phone logs, showing dates of all telephone solicitation calls made to a Residential Land Line and the identity of the persons so solicited by Defendants, and/or persons acting on their behalf, in the four years preceding this lawsuit;

(e)     All documents supporting the contention of Defendants that it had the prior express consent or invitation or permission of any called party to whom a call to a Residential Land Line was made in the four years preceding this lawsuit, and all documents evidencing the names, addresses and Residential Land Line numbers of all persons who Defendants contend provided such prior express consent or invitation or permission;

(f)     All documents supporting the contention of Defendants that it had an existing business relationship with any called party to whom a telephone solicitation call was made to a Residential Land Line in the four years preceding this lawsuit and all documents evidencing the names, addresses and/or telephone numbers of all persons with whom Defendants contend it had such a relationship;

(g)     All documents evidencing the identity and/or Residential Land Line numbers of all persons who requested that Defendants, and/or persons acting on their behalf, stop making calls to their Residential Land Line in the four years preceding this lawsuit;

(h)     All written, recorded, electronic or other documentation evidencing the revocation and/or attempted revocation by any Residential Land Line called party of any prior express consent that his or her Residential Land Line could be called by Defendants;

(i)    All written, recorded, electronic or other documentation evidencing the termination, and/or attempted termination, by any Residential Land Line called party of any existing business relationship with Defendants;

(j)    All documents evidencing or pertaining to any and all policies or procedures implemented by Defendants with regard to the making of telephone solicitations to Residential Land Lines;

(k)    All documents evidencing or pertaining to the knowledge of Defendants of the TCPA and/or the regulations and rulings of the FCC thereunder;

(l)    All documents evidencing or pertaining to any and all lawsuits and/or settlements to which Defendants was a party which, in whole or in part, pertain to the TCPA;

76.    Demand is made on Defendants to notify any third parties or vendors retained by Defendants to make telephone solicitation calls to Residential Land Lines of this preservation demand and request production of any documents included within this demand

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and as representative of all other persons similarly situated, prays for judgment against Defendants, awarding relief as follows:

a.    Certifying the proposed National Do-Not-Call Registry Class and Internal Do-Not-Call Registry Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent both the National Do-Not-Call Registry Class and Internal Do-Not-Call Registry Class.

b.    As to the National Do-Not-Call Registry Class, statutory damages as provided for under 47 U.S.C. §227(c)(5), trebled as may be appropriate;

c.  As to the Internal Do-Not-Call Registry Class, statutory damages as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;

d.  As to the National Do-Not-Call Registry Class, a permanent injunction restraining Defendant from making, or having made on its behalf, any additional non-emergency calls to Residential Land Lines that are on the National Do-Not-Call Registry without first obtaining the prior express written consent or permission or invitation of the called party or at a time when no established business relationship exists between Defendant and the called party;

e.  As to the Internal Do-Not-Call Registry Class, a permanent injunction  restraining Defendant from making, or having made on its behalf, any additional non-emergency calls to Residential Land Lines that are on the Internal Do-Not-Call Registry without first obtaining the prior express written consent of the called party;

f.  Pre-judgment interest from the date of filing this suit;

g.  A reasonable attorneys' fee to be paid out of any common fund created by virtue of this litigation;

h.  All costs of this proceeding; and

i.  All general, special and equitable relief to which Plaintiff and the respective Members of the National Do-Not-Call Registry Class and the Internal Do-Not-Call Registry Class are entitled to by law

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

Dated 9th day of March 2020.

Respectfully submitted,

**WERMAN SALAS P.C.**
/s/ Douglas M. Werman
Douglas M. Werman
IL Bar No. 6204740
77 West Washington St., Suite 1402
Chicago, IL 60602
P: (312) 419-1008
Fax: (312) 419-1025
dwerman@flsalaw.com
***Co-Counsel for Plaintiff***


**HUGHES ELLZEY, LLP**
/s/ Jarrett L. Ellzey
Jarrett L. Ellzey
Texas Bar No. 24040864
W. Craft Hughes
Texas Bar No. 24046123
Leigh S. Montgomery
Texas Bar No. 24052214
1105 Milford Street
Houston, TX 77006
P: (713) 322-6387
Fax: (888) 995-3335
jarrett@hughesellzey.com
craft@hughesellzey.com
leigh@hughesellzey.com

(*Pro hac vice forthcoming*)
***Co-Lead Counsel for Plaintiff***